CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
May 30, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No. 7:20-cr-00032 |
| v. | ) |
| | ) |
| WILLIAM PRESTON RAMEY- | ) |
| WOODARD, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant/Petitioner | ) |

## MEMORANDUM OPINION

William Preston Ramey-Woodard, a federal inmate proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF Nos. 132, 142. The government moved to dismiss Ramey-Woodard's motion, arguing that he is not entitled to relief, and Ramey-Woodard filed a response. ECF Nos. 151, 157. After reviewing the briefing and the record, the court **DENIES** Ramey-Woodard's motion to vacate, set aside, or correct his sentence.

### I. Background

This matter arose from incidents that occurred in 2020. According to the Agreed Statement of Facts (SOF) filed in this case, ECF No. 79, police used a confidential informant to purchase quantities of what was believed to be heroin from Ramey-Woodard. On March 17, 2020, video captured Ramey-Woodard entering the informant's residence and dropping off 127 grams of a mixture containing fentanyl in exchange for $4,000. Ramey-Woodard had a pistol in his pocket during the transaction. Id. at 1.

Two subsequent controlled purchases occurred, which culminated in a search warrant being served on locations associated with Ramey-Woodard. In total, Ramey-Woodard was

found responsible for selling quantities of heroin and fentanyl that converted to slightly less than 1,000 kilograms of drug weight. Id.

Following execution of the search warrant, Ramey-Woodard was taken into custody. He and his codefendant, Joseph Martin, began communicating via code using the jail phone system, and discussed the informant's identity and where he lived, and whether he should suffer consequences for working with the police. Their conversations were recorded by the phone system. Id. at 2.

On May 31, 2020, Martin went to the informant's residence and shot at him, barely missing him, but still causing injury. Ramey-Woodard asserted that while he wanted the informant to suffer a consequence as retaliation for working with law enforcement, such as a threat or a physical assault, he did not plan, intend, or anticipate that there would be a shooting or other potentially fatal attack on the informant. Id.

On July 16, 2020, Ramey-Woodard and Martin were named in a 10-count superseding indictment alleging offenses related to distribution of fentanyl and heroin, attempting to kill a confidential informant, and being a felon in possession of a firearm. Superseding Indictment, ECF No. 26. On February 11, 2022, Ramey-Woodard entered into a Rule 11 plea agreement in which he pled guilty to distribution of 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count One); possessing a firearm in furtherance of a drug-trafficking crime and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two); and conspiring to threaten bodily harm, or cause bodily harm to another person with the intent to retaliate against that person for providing information regarding the commission of

a federal offense to a law enforcement officer, in violation of 18 U.S.C. §§ 1315(b)(1) and (f) (lesser included offense of Count Nine). Plea Agreement, ECF No. 78 at 1–2.

On January 10, 2023, the court sentenced Ramey-Woodard to consecutive sentences of 87 months on Count One, 60 months on Count Two, and 33 months on Nine for a total of 180 months. J., ECF No. 107. Ramey-Woodard did not file a direct appeal.[1]

## II. Analysis

In his motion, Ramey-Woodard asserts that his attorney provided ineffective assistance of counsel in four respects: (1) his attorney failed to argue that Ramey-Woodard should not be subject to an upward departure or variance based on a statement in the plea agreement that the informant lost vision in one eye; (2) his attorney failed to ask for a recess when Ramey-Woodard became emotional during the plea allocution and could not continue speaking; (3) his attorney failed to argue that Ramey-Woodard was less culpable than his codefendant in the conduct underlying Count Nine; and (4) his counsel failed to object to the two-point adjustment for obstruction.

### A. 18 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

---

[1] In his pleadings, Ramey-Woodard expressed confusion about whether he had the right to file a direct appeal, because the form prisoners use to file a motion under § 2255 asks whether the petitioner filed a direct appeal. To be clear, as part of his plea agreement, Ramey-Woodard gave up his right to file a direct appeal, except for appealing any issue which could not be waived by law. Plea Agreement, ECF No. 78 at 10. The form pleading that Ramey-Woodard completed asks whether a direct appeal was filed because not all defendants waive their right to appeal as part of their proceedings.

28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

"The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12. The court may dismiss a § 2255 motion without a hearing when the motion, any attached exhibits, and the record of prior proceedings conclusively show that the moving party is not entitled to relief. United States v. Renrick, No. 6:11-CR-00338-JMC-16, 2019 WL 4140934, at *2 (D.S.C. Aug. 30, 2019) (citing 28 U.S.C. § 2255(b)).

"When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). The court does not weigh the evidence but reviews the facts in the light most favorable to the petitioner and determines whether there is a genuine issue of fact. Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *3 (E.D.N.C. May 20, 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Permissible inferences must still be within the range of reasonable probability, ... and it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture."

4

Id. (citing Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also United States v. Mayfield, 320 F. App'x 190, 191 (4th Cir. 2009) (applying prejudice standard to claim of ineffective assistance at sentencing.)

**(1) Injury to the Informant**

Ramey-Woodard asserts that his attorney erred by not objecting to language in the plea agreement that the victim was shot in the eye or otherwise sustained a physical injury. The plea agreement contained the following language:

> I am aware that the victim in this case is alleging the loss of vision in one of his eyes as a result of the events in this case. If necessary, I reserve the right to contest, at the time of sentencing, the scope and nature of any injury to the victim, and to contest how that would affect the calculation of my sentencing guidelines.

Plea Agreement, ECF No. 78 at 4. Also, when the prosecutor was reviewing the terms of the plea agreement, he stated that Ramey-Woodard was "on notice that the gentleman who got shot at is alleging damage to his eye, and that may be something that comes up in the course of sentencing that may impact the guidelines here." Guilty Plea Tr., ECF No. 150 at 18.

Despite this language in the plea agreement, there was no increase to Ramey-Woodard's sentence based on the victim's allegation of vision loss. See Pre-Sentence Investigation Report (PSR), ECF No. 104 ¶ 23 (adding no points to the offense level for a "victim related adjustment.") It was explained at the sentencing hearing for Ramey-Woodard's codefendant that despite the victim's initial allegation of vision loss, he refused to get a formal medical diagnosis, without which there was no basis to increase the offense level based on the victim sustaining a permanent injury. PSR for Joseph Martin, ECF No. 96 at 22. Therefore, while Ramey-Woodard is correct that his attorney did not object to this language at sentencing, his failure to do so was not ineffective assistance of counsel as the court did not consider the alleged vision loss at sentencing.

6

**(2) Failure to Ask for a Recess**

Ramey-Woodard states that during his sentencing allocution he became overwhelmed with emotion after his attorney vividly described details of extremely traumatic incidents that occurred in his childhood. Ramey-Woodard asserts that he could barely speak and was not able to tell the court everything he wanted the court to consider at sentencing. The transcript of the sentencing hearing reflects that Ramey-Woodard spoke only a few sentences before he became emotional and started crying when he was talking about his family being present and thanking them for their support. Tr. of Sent. Hr'g, ECF No. 138 at 29. He concluded his short allocution by saying, "I'm sorry to my family for putting y'all through this. That's it. That's it." Id.

Federal Rule of Criminal Procedure 32(i)(4)(ii) provides that before imposing a sentence, the court must address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence. The rule is based on the common-law right of allocution and gives the defendant the personal opportunity to speak before imposing the sentence. Green v. United States, 365 U.S. 301, 304 (1961); see also United States v. Muhammad, 478 F.3d 247, 249 (4th Cir. 2007) (declining to establish a per se rule of reversal, but vacating sentence on direct appeal where defendant showed he was denied opportunity to allocute and there was a possibility that he could receive a lesser sentence had he been permitted to allocute at sentencing).

But "[t]he failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus." Hill v. United States, 368

U.S. 424, 428 (1962). This is because it is an error "which is neither jurisdictional nor constitutional." Id. Nevertheless, failure by a defendant's counsel to properly inform him about his right to personally address the court can rise to the level of ineffective assistance of counsel when both prongs of the Strickland test are met. Holmes v. United States, No. 2:18cv200, 2019 WL 2195232, at *10–11 (E.D. Va. May 21, 2019).

In Ramey-Woodard's case, he was informed about his right to allocute and did allocute to the court. Although he became emotional while speaking, the record does not show that he asked either his attorney or the court for an opportunity to compose himself so that he could continue with the allocution. By saying, "That's it. That's it[]" at the end of his statement, it was reasonable for his attorney and the court to assume that he was finished speaking. Accordingly, Ramey-Woodard's counsel did not act in an objectively unreasonable manner when he did not ask the court to allow Ramey-Woodard to collect himself and continue with his allocution.

Nor can Ramey-Woodard show prejudice. Although he argues in his § 2255 motion that had he been allowed to gather his thoughts and continue with his allocution, he would have told the court that he never agreed with his codefendant that the informant in his case needed to suffer a consequence for cooperating with the police, Resp., ECF No. 157 at 2; SOF, ECF No. 79 at 2, he had already testified under oath that he agreed with the prosecutor's version of events. At the guilty plea hearing, the court asked the prosecutor to present the facts it would be prepared to prove if the case went to trial. Among other things, the prosecutor said the government would be prepared to prove that while Ramey-Woodard was in jail after his arrest, he and his codefendant were talking on the jail phones about the

informant's identity and that the codefendant went to the informant's home and shot at him.

Id. at 28. The following exchange then took place:

> MR. BASSFORD (the prosecutor): Mr. Ramey-Woodard takes the position, he would assert, that in fact he did want the informant to suffer a consequence for telling, you know, be that threats or be that – maybe being punched in the nose or something like that, but he did not plan, intend, or anticipate that there would be a shooting or something fatal that would be, you know, aimed at the informant. And this is Mr. Ramey-Woodard.

> THE COURT: Okay. Ms. Spearman, is there any dispute about those facts just presented?

> MS. SPEARMAN (Ramey-Woodard's attorney): No, sir, there are not.

> THE COURT: Okay. Mr. Ramey-Woodard, you've just heard a summary of evidence against you. Do you hear anything in that summary with which you disagree?

> THE DEFENDANT: No.

> THE COURT: Did you go over the written statement of facts with your lawyer?

> THE DEFENDANT: Yes.

> THE COURT: And did you do the things that are set forth in that written statement of facts?

> THE DEFENDANT: Yes.

> THE COURT: Are you in fact guilty of what's charged in Count One, Count Two, and the lesser included offense of Count Nine in the indictment?

> THE DEFENDANT: Yes.

> THE COURT: Tell me what you did in your own words that makes you feel like you're guilty of the charge.

> THE DEFENDANT: I sold him heroin. Got arrested for it.
> Was talking on the phone trying to figure out who it was that,
> you know, set me up. Asked a couple of questions. Wanted the
> dude to get beat up, but I never told him to go, you know,
> shoot him or kill him or nothing like that, you know what I
> mean? But that's basically what made me guilty.

Tr. of Guilty Plea Hr'g, ECF No. 150 at 28–30.

In addition, Ramey-Woodard was afforded other opportunities to address the court about any concerns he had prior to his allocution. At the guilty plea hearing, he agreed that if something was said with which he did not agree, or that if he had questions, he would speak up. Id. at 3–4. He stated under oath that he understood what he was charged with in Count Nine, that he was pleading to a lesser included offense, and that he understood the elements that the government would have to prove if he went to trial. Id. at 12–15. Ramey-Woodard also was given an opportunity to contest the contents of the plea agreement but did not do so. Id. at 16–19.

Ramey-Woodard's assertion in this § 2255 motion that had he been allowed more time for his allocution he would have told the court that he did not intend any harm to come to the informant is contradicted by his sworn testimony at the guilty plea hearing and cannot serve as a basis for relief. Ramey-Woodard had multiple opportunities to tell the court about any dispute he had with the SOF and the plea agreement, but rather than do so, he testified under oath to the contrary. Accordingly, he cannot show that he was prejudiced when his attorney did not seek a recess during his allocution.

### (3) Relative Culpability

Ramey-Woodard argues that his attorney was ineffective at sentencing when he did not argue that Ramey-Woodard was less culpable than his codefendant on Count Nine, and

10

in particular that it was his codefendant's idea that the informant should suffer a consequence for working with the police. However, this assertion is not supported by the record, as Ramey-Woodard's attorney did argue to the court that he was not as culpable as his codefendant.

Ramey-Woodard's attorney told the court that Ramey-Woodard did not intend "for there to be any sort of violence, and certainly not for someone to literally shoot this person in the face." Tr. of Sent. Hr'g, ECF No 138 at 12–13. He added, "[t]here's some liability there, but I want the court to understand that Mr. Woodard, although having these very indirect conversations, never intended for there to be an act of violence or for there to be any sort of attempted murder." Id. at 13. The attorney also characterized Ramey-Woodard's codefendant as a "completely volatile" person who took the telephone conversations as an order and interpreted the conversations "as he saw fit." Id. The attorney argued that Ramey-Woodard's sentence should be significantly shorter than that of his codefendant "based on the context and circumstances of his participation in the aggravated scenario." Id. at 16. When the court was assessing the 18 U.S.C. § 3553(a) factors, it noted that Ramey-Woodard's codefendant had received a 10-year sentence on Count Nine, as part of his total 20-year sentence, and the court assessed Ramey-Woodard 33 months on Count Nine as part of his 15-year sentence. Id. at 32, 38.

Thus, the record establishes that not only did Ramey-Woodard's attorney argue that he was less culpable than his codefendant on Count Nine, but that the argument was successful. Accordingly, the attorney provided effective assistance at sentencing when he argued that Ramey-Woodard was less culpable than his codefendant on Count Nine.

11

### (4) Obstruction of Justice

As part of his offense level calculation, Ramey-Woodard received a 2-level increase for obstruction of justice based on USSG § 3C1.1. PSR, ECF No. 104 ¶ 25.[2] The court found that the 2-level increase for obstruction of justice was consistent with Ramey-Woodard having pled guilty to Count Nine concerning the conspiracy between Ramey-Woodard and his codefendant with regard to the testimony of a potential witness. Tr. of Sent. Hrg., ECF No. 138 at 37.[3]

Ramey-Woodard argues that his attorney was ineffective for failing to object to the two-point increase at sentencing. In support, Ramey-Woodard asserts that the drug transaction was captured on video and that "the deal was done" and his "arrest was imminent," so the informant's testimony was not going to be needed. Mot., ECF No. 142 at 7. The court reads this argument as Ramey-Woodard contending that the discussion about punishing the informant for cooperating with police and the subsequent shooting did not obstruct justice because the investigation was complete and the government could rely on the video, meaning that the informant did not need to be called as a witness.

The court is not persuaded by this reasoning. First, at the time Ramey-Woodard and his codefendant were talking about the informant and making the decision to retaliate

---

[2] If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels. USSG. 3C1.1

[3] As an aside, and as noted by the government in its motion to dismiss, ECF No. 151 at 5, the PSR recommended a two-level enhancement for the specific offense characteristic of using violence, making a credible threat of violence, or directing the use of violence, which, if accepted by the court, would have increased Ramey-Woodard's total offense level to 31. PSR, ECF No. 104 ¶¶ 22, 30. At sentencing, no mention of the proposed 2-level increase was made by the parties, the probation officer, or the court, and the increase was not reflected in Ramey-Woodard's total offense level or guidelines sentencing range.

against him, it was not clear whether the informant would be called as a witness. Second, the upward adjustment applies if the defendant's obstructive conduct occurred with respect to the investigation, as well as with the prosecution or sentencing of the defendant. USSG 3C1.1, comment. (n.1). Ramey-Woodard agreed that his codefendant should "beat up" the informant because he participated in the investigation of Ramey-Woodard's drug activities. Under these circumstances, counsel's decision to forego arguing that the 2-level increase for obstruction should not apply was not objectively unreasonable.

In addition, as part of the plea agreement, Ramey-Woodard agreed to the 2-level increase to his sentence for obstruction of justice. Plea Agreement, ECF No. 78 at 4. At the guilty plea hearing he testified under oath that he had gone over the plea agreement with his attorney, read and initialed every page, and signed it at the end indicating that he agreed with its terms. Tr. of Guilty Plea Hr'g, ECF No. 150 at 16–17. The prosecutor summarized the plea agreement for the record, including that Ramey-Woodard was "getting a two-level increase" for obstruction of justice. Id. at 17–19. Ramey-Woodard agreed that the summary of the agreement was consistent with his understanding of the operative terms of the agreement. He said he did not have any questions about the plea agreement, agreed to its terms, and asked the court to accept it. Id. at 19.

Given the foregoing, Ramey-Woodard's counsel was not ineffective for failing to argue that the obstruction enhancement should not apply when the parties had agreed that it should apply. "Counsel cannot be deemed ineffective for failing to present arguments and evidence that would conflict with the knowing and voluntary guilty plea, Plea Agreement,

and Factual Basis." Fleischer v. United States, No. 1:19-CR-58-MOC-WCM-1, 2021 WL 2517378, at *6 (W.D.N.C. June 18, 2021).

## IV. Conclusion

For the reasons stated above, the court **DENIES** Ramey-Woodard's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF Nos. 132, 142, and **GRANTS** the government's motion to dismiss, ECF No. 151. Because Ramey-Woodard has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: May 29, 2024

Michael F. Urbanski
Chief United States District Judge